All right, thank you for your patience this morning. It's a full day. Our final case this morning is 24-2152 Fuqua v. Santa Fe County. Mr. Huss? Thank you. Excuse me. Thank you. May it please the Court. I'm Brandon Huss, and with me at council table is David Roman. We're here representing Appellants Zook, Martinez, and Guzman in this matter. I'd like to frame the conversation this morning with a hypothetical, if the Court would indulge me. Imagine a scenario where a man enters a bank intent on committing a robbery. He has a gun. He goes inside. He starts the robbery, and somebody gets shot during the struggle. Robbery goes south. The suspect ends up barricaded in the bank. Police barge in, shoot the suspect. Months later, they're sued in a complaint. The complaint says this particular man went into the bank to get some money, and the police came in and shot him. Would that meet the Iqbal plausibility standard in the Tenth Circuit or under Supreme Court precedent? Of course not. But the question is, what can you omit regarding the relevant factors for a district court to consider at the beginning of a case if the defendants raise a challenge at Rule 12 like we have here? Yeah, that was, I had that hypothetical in mind also, and one answer might be that you would convert your 12b motion to a summary judgment motion and attach the videos, is functionally what happened here, and there you lay out the additional facts that you think are, rather than complain implausible. Yeah. Why couldn't or shouldn't that happen here? The reason that I don't think it should happen here, it goes back to this circuit's Robbins case and other Supreme Court cases that we have in the briefing that says you should decide these qualified immunity questions as early as possible. Robbins itself specifically says that this is sort of a special breed of case that gets dealt with in a different way, and even though Robbins predates Iqbal, if you think about the Iqbal elements in that context, our argument is that this particular claim fails under the first prong of qualified immunity for either of two reasons. Either in the first instance that it's just sort of silent on the facts that the court would need to perform a Graham and Larson analysis, so you haven't pled things from which the court can really do the balancing, and instead you have omitted the most important factors, and therefore you have not pushed the claim from possible to plausible under Iqbal, even without the video, that you have to speak to the elements that a district court needs to do its work, and if you're just silent you just say, well, there's a pursuit followed by a chase where a man gets shot. So you're saying like there's an enhanced plausibility standard in qualified immunity? I'm not saying that it's enhanced plausibility, but I'm saying that you have to at least address the core questions that form the basis of a claim to reach plausibility. I think it's actually the same in any case, and that's what the Supreme Court tells us in Iqbal, is that saying things like, well, the Attorney General must have known that this bad conduct was going on, therefore we can go into discovery and subject him to discovery before dismissing his case, fail. And that's what we have here, is you pull out the most important parts and just say, well, there's a pursuit at the end, he runs away and he gets shot. That's not an accurate depiction of the scenario that a district court needs to perform a prong one qualified immunity analysis. Is there a case that goes down that path? I mean, maybe it's Iqbal itself. I think it is Iqbal itself. The other case, even though we're not quite there yet in the argument, that I'd like to point out is we quote the Saleem case, the Sixth Circuit case in our briefs, where the court takes a look at video in the context of a Rule 12 motion and essentially says, at least in the Sixth Circuit, we can watch video if it undermines the story told in the complaint. There's actually a better one that we found in preparing for the oral argument that's better than Saleem, and that's Bell v. City of Southfield, Michigan, which is 37F4362. And in that case, it's a tasing case, where there is a dispute at the door of a car. Get out of the car. No, I'm not going to get out of the car. And the question turns on whether or not the person had a gun and the interactions that were happening. The complaint that gets filed in that case says, no, everything was going fine, and you just used force on him for no reason. They submit the tape at Rule 12, and the Sixth Circuit at least says, at this juncture, because the tape directly undermines the allegations made in the complaint, we can watch it, and then we can grant qualified immunity. Was it referenced in the complaint? No, not in that case. But the problem for you, I think, is that the Sixth Circuit said, with regard to the second hypothetical, that the tasing, that the video contradicted not what was depicted, but was, but that there was an omission in the allegations, and that was contradicted by the video of the tasing in the Bell case. So it seems to me that the Bell v. City, are you talking about Bell v. City of Southfield? Yes, Your Honor. And to me, that held exactly the opposite of what you're saying, because there were two hypotheticals that Judge Thabar was addressing, and in the second hypothetical, it was regarding the Scott v. Harris blatant contradiction of an omission in the complaint, which is exactly what your distinction is here. Well, I guess on my mind, it fits into the first hypothetical, where it does contradict at least the insinuations of the complaint, that there's just a slow speed pursuit at the end of which the suspect jumps out of the door and runs away. I think it's contradicted by the facts, again, in the context of Graham and Larson, where the court needs to know what's going on, and what's going on in this particular case is the suspect is shooting at the police mere seconds before he runs away. He's shooting at them, he jumps out, he takes a few steps, and you know, I would direct the court at this point to the estate of George case that we talked about a lot in the briefs there. This circuit finds that running towards a city in the context of having had this gun, and talking about killing yourself, and making threatening gestures is sufficient to warrant force under the fourth amendment. Still possesses weapon? Yes, your honor, he did. That is a distinguishing characteristic, but that that raises the second prong of qualified immunity, and that is that both the plaintiffs and the district court here say that Carr is the best case to look at, but Carr is absolutely factually distinguishable from this case. So even even if plaintiff could survive the first prong of qualified immunity, they can't survive the second, because there is no case that would have told defendants Zook, Martinez, and Guzman that they have to stop after being fired at, and re-evaluate everything in those couple of seconds. Carr certainly doesn't tell them that, and no case that's in the record before this court tells them that. So whether whether it's first prong or second prong, the complaint I believe is deficient, and to circle all the way back to the question that you asked me at the beginning, do we convert? No, and I think we don't, because that subjects these particular defendants to the ongoing burdens of discovery, which is exactly what I think Iqbal was trying to prevent. It's saying you don't get to jump to the next phase of an immunity question merely because you think you're going to find something in discovery, and if this court were to endorse the idea that the way to reach plausibility is to take your story and delete sufficient facts from it, so that the district court can't perform a Graham or Larson analysis, or Graham and Larson analysis, then what you've really done is is encourage false plausibility. If we know the whole story, we'll probably grant qualified immunity, but if you could pick and choose enough things to take out to where the district court says, well I don't know, then I guess I'd assert two things. One, false plausibility shouldn't let you open up discovery and move to the next phase of the case, and two, it's a scenario that I think does warrant looking at the Bell case or an 11th Circuit case, Johnson versus the City of Atlanta, is another one where they look at videos, and that one's interesting because the defendants there tried a different method to get the video in where they attached it to their answer and then filed a 12c motion, but when the 11th Circuit takes it up, they don't focus on that, they just again focus on this idea that those videos directly undermine what the complaint is telling, and that's what we were trying to convince the district court of here, and that's what we're trying to convince this court of today. On that point, what do we do with this? At the very end of the district court's remarks, he says whether to convert into summary judgment, I guess I'm inclined to deny the motion on that basis as well, even if he had converted it to a summary judgment based on the tapes, and then goes on to say, and I think they're just back questions about whether it was reasonable, so forth, so on. That's after fully viewing the tapes. How does that fit into our equation? That's a very good question. I mean, it struck me as strange that the district court gave what was in essence an advisory opinion on summary judgment without the rest of the record, because if we weren't on summary judgment, it was a, if he considered the tapes and applied 12b-6 otherwise. See, that wasn't the way that I read it. The way I read it was that he was saying, if I can consider them, then I have to convert, and if I convert, I'm going to deny you summary judgment. Okay, and maybe we're saying the same thing. He's saying, if there were nothing more on summary judgment than these tapes, I would still deny, because I think that there's a question of fact about whether they needed to be doing this, whether they could justify it, the sheer number of shots at a man that's down, going down. It seems at some point it slid into excessiveness, even if it wasn't initially excessive. That's a statement by the district court that's in front of us. Do we disregard it, or do we factor it in? I think you disregard it because it is, in essence, an advisory opinion on a portion of the record. I mean, if this were to go back, if you affirm and we go back and file a summary judgment motion, the summary judgment motion is obviously going to be supported by testimony of the officers as to what they were perceiving at the time. I think changing the contours of what an opinion on summary judgment might be, but as I said earlier, that would subject those particular officers to discovery and the burdens of litigation that I think Iqbal and its progeny protect them from, but the district court opinion didn't just say that, right? I mean, it really appears to be a heavily results oriented opinion where Judge Browning is talking about the Taylor case and saying that he doesn't even think you need a case, really, in many instances anymore. Even maybe this one, I think the quote was that he hopes that Taylor cut a hole in qualified immunity large enough to drive a truck through, and what you're seeing, I think, in that sort of quasi advisory notion is the idea that I think things should be moving towards trial, but that's not what Iqbal and the holdings of this court suggest in this context. So going back to the beginning, I think that the complaint without the videos has holes in it. It does not tell the court enough about what the suspect was doing for a court, that court or this court, to be able to analyze Graham and Larson, and without that, you can't reach plausibility. You can't reach plausibility in a negative way, and even if it did, with or without the videos, if it does have enough content, then there's simply no case that would have told them. So that's where I think the district court and I have the most direct disagreement, Your Honor, is that even if Judge Browning wants to perform that 20-20 hindsight analysis of, well, I've counted the number of seconds and I've watched very carefully and I see the gun hit the ground before he runs away, then there's still no case that would have put my defendants on notice that they had to analyze all that on this dark street in the middle of the night and stop firing, even though the suspect was running towards, again, like City of, or a State of George, towards an occupied area, but also in the back of the videos you could see a car sort of waiting to get down the road. I don't think there's any case, I wasn't able to identify any case, that tells them, stop and let him run away or chase him, do whatever you're going to do, that forces Bard by clearly established law, and neither the appellee or the district court point to one. The best they have is Carr, the case where there's a significant temporal gap, a piece of concrete, and a nearly prone suspect. That doesn't put these defendants on notice that they need to stop firing in this heat-of-the-moment instance. I forgot to say it at the, I'm sorry. I ran across a case from the Ninth Circuit that stands for the proposition that the filing of an amended complaint moots an appeal. Do we even have jurisdiction over the original complaint at this point? Well, so the original complaint, we filed a motion to dismiss, which sort of sat there for a while, but Judge Browning granted leave to amend. Plaintiffs did, in fact, amend. We filed an additional motion, essentially the same thing. Judge Browning then held a hearing, that's the one that the transcripts and the record from, and resulted in his short order denying those. Now plaintiffs, after the fact, did file an additional amended complaint, but the only thing I think it changed, if I recall correctly, is it changed the name. There were some naming issues, so I don't think that would interfere with jurisdiction. I don't know, I mean, I don't know if it's a bright line or a functional test. Yeah, I haven't looked at that issue specifically, but we certainly believe the court has jurisdiction. If I could, I'd like to reserve any time I have. I only have a few seconds now. Thank you. Good morning. I'm Doug Perrin. I think I had, my first name, Kenneth Perrin, is on the, on the docket, and I'm here with Sam Rule, who's with the law firm of Rule and Clark. My law firm is called the Perrin Law Firm. First of all, counsel spoke about undermining the story told in the complaint, evidence which would undermine the story told in the complaint. That doesn't mean, I'm not familiar with that language in any case. I'm not familiar with a, with a holding in a case that says that the complaint has to be prepared with some eye toward potential Graham versus Connor and Larson factors, but in this instance, certainly the complaint tells the story and it cannot be undermined. It's clear from Judge Browning's opinion in the discussion of the videos that there's nothing to be undermined. The only thing we didn't talk about was the BB gun. We said there was a Mr. Roybal exited the truck and was unarmed as he fled from the sheriff's deputies, and they shot him in the back. Now that's not just a Carr versus Castle case. That is Tennessee versus Garner with the 15-year-old boy, and I don't even think we're to that point at this stage because we have a plausible claim by pleading those particular facts. Didn't you get those facts from the video? Yes, I'd say the answer to that is yes. And the videos, they do show what you said, but they show a driver going, driving backwards down a major road, 40 or 50 miles an hour. They do. Approaching the officers, threatening, then turning around and speeding off, stopping. They order the suspect out of the car, and in return they get a brandishing firearm and shots. They return fire. The suspect gets out of the truck and he's running towards an occupied vehicle. You've left out the main action in this movie. Oh, I appreciate what you're saying, Your Honor. I do respectfully disagree. I think we said exactly what the pertinent facts were for our case. I don't, again, know of a rule that says we have to plead defensive material if we are pleading a plausible cause of action, which we did. There is a cause of action stated against each of these defendants for having acted unreasonably and having shot an unarmed man in the back as he was fleeing. That's a case. That states a claim. Now, are there other facts? The BB gun, the driving backwards, the foolish things that Mr. Roybal did? There are. But we said there was a chase, which is true, and we said that he was in a stolen vehicle, which is true, and that leads to this event. We're not certainly here to defend the wisdom of Mr. Roybal's but we are here to say that what he did should not have led to what amounts to a sort of an execution on the part of the jury. You allege that all three officers fired lethal shots. What's that based on? You know, I'm not sure. Don't you have to separate? Don't the defendants, don't they have the right to defend themselves? Actually, as I think about it, Your Honor, I think that- You can't make up an allegation that Roybal or the others fired a lethal shot if you don't know. I believe that came from a hearing that we had with Judge Browning, to tell you the truth, before we filed the second amended complaint. There was some discussion about whether additional shots beyond a certain point were unreasonable. I believe that's where that came from. I could be wrong. Yes, sir. Is the question on the video whether or not the video blatantly contradicts the allegations that you made in the complaint? That's what I understand the county to be saying. Because the part of the, to follow up on Judge Tinkovich's questioning, that the part of the scenario that you start with in the complaint, it seems to be just common sense, maybe, that if there was quite a bit of separation between the initial chase, the initial gunfire, his turning back and firing the BB gun back at the officers, and if there was a cognizable, you know, passage of time, but this happens by looking at these views on the video, it happened so rapid fire, why isn't it fair to say, sort of like the Bells v. City of Southfield case did, that this did, the video did, in fact, contradict the allegations in the complaint because essentially of what, similar to the hypothetical, for you know, for example, if someone runs up to me with a gun and is shooting, and then all of a sudden there's a security officers that sees it, and they drop the gun, and then a split second later the officer, you know, shoots the assailant, and then the assailant's family says, well, you know, alleges in the complaint that the security officer shot an unarmed man, you know, that was defenseless. Well, as a practical matter, because it was so rapid fire, what didn't it contradict the allegations? At the time, none of the bullets that were fired, I believe, that this will prove to be true, none of the bullets that were fired before he exited the truck hit him, and so the killing, the actionable thing in this case, occurred after he had dropped the gun. But it happened so fast. It did. You know, so I'm not arguing with you, but I'll just tell you sort of my concern if we do consider this video, you can tell me if I'm wrong, because there may very well be. But, you know, he turns, he's shooting, and then there's a, my memory is, then there's a stop in the action, and then he comes out, he is wielding the weapon, and the three off, the three vantage points, you know, did he, you know, there is a gun on the ground, but it is so fast. By the time he exits the vehicle, the gun drops on the ground, and then there's a just a slew of gunfire. So it just, it seems to be troubling that it just, if we consider the video, that it happened so quickly. If you consider the video, that's true, and I go back to the question that Judge Timkovich asked earlier about summary judgment, you know, we agreed that it should be converted to a summary judgment. Well, without, yeah, and I understand that, but just in terms of whether it contradicts the allegations of a complaint, why doesn't it contradict the allegations of the complaint, because it happened so quickly? What you're, what you're alleging, their argument, I think, is essentially that what you're alleging really is just so misleading, because sort of, it's like my analogy, that, well, you know, that the family of the assailant says that, you know, well, they shot an unarmed man. Well, yeah, but, but, but that's our, that's our case. That's, that's what happened, and certainly there will be, I believe there will be a question of fact about whether that was reasonable or not, and the time frame will certainly be part of that, but I think that comes later in the case. Right now, at this stage, I think we have stated a plausible claim for relief, and whether we get to go all the way to the end with this remains to be seen. Do you think we should or should not review, this panel, review the videos? Do I think you should or should not? I guess, I guess I have to say should not, since Judge Browning did not consider them in reaching his decision. But you, you submitted them also. Well, we certainly did, yeah, and, and we wanted to go forward with a, with a summary judgment motion and try to clear this stuff out early as opposed to late. That, that's, and I'm here to defend Judge Browning. I think, I think that opinion was marvelous, and I wish I had his intellectual rigor. You wanted to go with a motion to convert it to a motion summary judgment without any more discovery that very day, or you wanted to stop? Oh, no, no, just down the road. It was my understanding, Your Honor, of how that would have happened. Yes, sir. You know, we could have given it a shot that day, but I don't think that would have been the best practice. And truly, our argument is, it's largely contained in Judge Browning's opinion, of course. We, we, we do agree that his decision not to consider the videos was a proper one because there really is not supporting data that that would be an official record. It wasn't attached, obviously, and wasn't into the record in any other way. And with that, I thought he made the principal decision not to consider it. He did, as the earlier question pointed out, he did give us a preview of what he thought those videos showed, and I think that's just helpful to counsel. What, what the court does with that is, the court knows better than I as far as what should be done with it, but it does appear that even if he had reviewed the videos, this case would still be going forward if he'd considered them because of his conclusion at least two of the the weapon being dropped. If there anyone... And just to sum up, you're, the principal case that clearly establishes the law here is what, what are you relying on? It is that there, there was a chase. The case, the case. Oh. Tennessee versus Lane or... Tennessee versus Garner and, and Carr versus Castle would be our cases. Yes, sir. Yes, sir. That's right. Thank you. Thank you. Thank you. And were you splitting some argument? No. Could you give him a minute and 14? Thank you. I'll be very brief. I just wanted to point out, it was something the court just asked about, and that is that, that this case is also interesting with respect to the video in that plaintiffs also put them into the record. So it wasn't just us, it's both sides entered these into the record after the first motion to dismiss was filed. The other thing I would say in response to the arguments just made by counsel is that we aren't arguing that, that a plaintiff need to anticipate affirmative defenses and plead against them. We're arguing that to reach plausibility you have to address what actually happened or at least the minimum elements. Excuse me, in the fourth case you have to think about the Graham factors and Larson factors and address them in such a way that the court can look at the totality and decide, and that wasn't done here. That's why we put the videos in, but, but that I would, I would rest unless the court has any additional questions. Thank you, counsel. You're excused. Thank you. The case is submitted. We appreciate your arguments. The court is in recess until tomorrow morning at 830.